# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into on this 30th day of December 2019 (the "Effective Date") by and among NGK Spark Plug Co., Ltd. and NGK Spark Plugs (U.S.A.), Inc. (collectively "NGK Spark Plugs") and the Attorney General of the State of California ("California AG"), on behalf of the State of California, including its state agencies, ("California"), and the Attorney General of the State of Florida ("Florida AG"), on behalf of the State of Florida, including its departments, commissions, divisions, agencies, counties, municipalities, and any other entity that is an arm of the State of Florida, and the predecessors, successors, administrators and assigns of any of the foregoing ("Florida"). The California AG and the Florida AG are hereafter referred to as the "State AGs" and California and Florida are hereinafter referred to as the "Settling States."

WHEREAS, the State AGs are investigating possible violations of the federal antitrust laws, including Section 1 of the Sherman Act, as well as violations of their respective state antitrust and unfair competition laws, including California Business and Professions Code Sections 16720 *et seq.*, California Business and Professions Code Sections 17200 *et seq.*, the Florida Antitrust Act, and the Florida Deceptive and Unfair Trade Practices Act, related to the possible suppression and elimination of competition by the fixing of prices for spark plugs, standard oxygen sensors, and air fuel ratio sensors (collectively, the "Released Parts");

WHEREAS, the State AGs believe that NGK Spark Plugs and its predecessors manufactured the Released Parts that were installed in automobiles purchased by the Settling States;

WHEREAS, the State AGs believe they have valid claims for damages, penalties, and attorneys' fees against NGK Spark Plugs and litigation is warranted, but nevertheless believe that

resolving their claims against NGK Spark Plugs according to the terms of this Agreement is in the best interest of the Settling States in advancing their investigations;

WHEREAS, NGK Spark Plugs has entered into separate class action settlement agreements ("Class Action Settlement Agreements") with the following groups: (1) plaintiffs purporting to represent a class whose members include automobile dealership purchasers of the Released Parts ("Automobile Dealership Plaintiffs") in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.), Case No. 2:15-cv-03002 (the "Automobile Dealership Action"); and (2) plaintiffs representing a class whose members include end-user purchasers of the Released Parts ("End-Payor Plaintiffs") in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.), Case No. 2:15-cv-03003 (the "End-Payor Action") (collectively, the Automobile Dealership Action and the End-Payor Action are referred to as the "Actions"); (*In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.) is referred to as the "MDL Litigation");

WHEREAS, the Class Action Settlement Agreements will result in the dismissal and release of claims by the automobile dealership purchaser class and end-user purchaser class;

WHEREAS, NGK Spark Plugs, without any concession or admission of wrongdoing and despite its belief that the Released Parties (as defined below) are not liable for the claims that have been or could be asserted by the Settling States, and its belief that the Released Parties (as defined below) would have good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and potential future litigation, and to obtain the dismissal and releases contemplated by this Agreement, and to put to rest with finality all claims that could have been asserted against NGK Spark Plugs and the other Released Parties (as defined below) by the Settling States;

2

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the California AG, on behalf of California, the Florida AG, on behalf of Florida, and NGK Spark Plugs, that all Released Claims (as defined below) shall be finally, fully, and forever settled, compromised and released, with prejudice and, except as provided herein, without additional attorneys' fees or costs, on the following terms and conditions:

1. NGK Spark Plugs shall make a payment to the California AG in the amount of $279,166.67 ("California Settlement Amount"). The California Settlement Amount shall be used as payment for damages allegedly arising from any purchases or leases by California of the Released Parts or vehicles containing the Released Parts, and for attorneys' fees and other costs. The California AG shall provide NGK Spark Plugs with written payment processing instructions for payment by electronic transfer. NGK Spark Plugs shall pay the California AG within the later of (1) twenty (20) calendar days after the Effective Date of this Agreement, or (2) twenty (20) calendar days of receiving written payment processing instructions from the California AG. No part of the California Settlement Amount paid by NGK Spark Plugs shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures, or punitive recoveries.

2. NGK Spark Plugs shall make a payment to the Florida AG in the amount of $139,583.33 ("Florida Settlement Amount"). The Florida Settlement Amount shall be used as payment for damages allegedly arising from any purchases or leases by Florida of the Released Parts or vehicles containing the Released Parts, and for attorneys' fees and other costs. The Florida AG shall provide NGK Spark Plugs with written payment processing instructions for payment by electronic transfer. NGK Spark Plugs shall pay the Florida AG within the later of (1) twenty (20)

calendar days after the Effective Date of this Agreement, or (2) twenty (20) calendar days of receiving written payment processing instructions from the Florida AG. No part of the Florida Settlement Amount paid by NGK Spark Plugs shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures, or punitive recoveries.

3. The Settling States agree that, other than the settlement amounts, as listed in paragraphs 1 and 2 above, they shall have no other recovery of costs, fees, attorneys' fees, damages, penalties, or injunctive or other relief against NGK Spark Plugs or any of the other Released Parties. Released Parties means (i) NGK Spark Plugs, (ii) all of NGK Spark Plugs' past and present, direct and indirect, parents, subsidiaries, affiliates, and partnerships, including without limitation NGK Spark Plugs (U.S.A.) Holding, Inc. and NTK Technologies, Inc., as well as their respective predecessors, successors and assigns, and (iii) each and all of the present and former principals, partners, officers, directors, supervisors, employees, stockholders, members, insurers, attorneys, and assigns of each the persons and entities listed in (i) and (ii).

4. In consideration of the payment of the settlement amounts, as listed in paragraphs 1 and 2 above, and for other good and valuable consideration set forth in this Agreement, the sufficiency of which is hereby acknowledged, the Settling States hereby irrevocably and completely release, acquit, and forever discharge NGK Spark Plugs and all of the Released Parties from any and all claims, demands, judgments, actions, suits or causes of action, that are or could be asserted, whether known or unknown in any actions by or on behalf of the Settling States, or by or on behalf of any of the entities included in the foregoing definitions of California and Florida, arising out of or relating to any act or omission of NGK Spark Plugs or any one or more of the other Released Parties or of persons or entities alleged to be co-conspirators of NGK Spark Plugs or any of the Released Parties concerning price-fixing, market allocation, bid-rigging, or any unfair

or deceptive anti-competitive conduct in the manufacture, sale, or distribution of the Released Parts at any time prior to and through the Effective Date (collectively, the "Released Claims").

5. With respect to the Released Claims, California, and each of the entities included in the foregoing definition of California, expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Florida, and each of the entities included in the foregoing definitions of Florida, similarly waives any analogous rule or provision of Florida law to the extent it exists.

6. The Settling States and NGK Spark Plugs shall use their best efforts to effectuate this Agreement and its purpose. To this end, the California AG and NGK Spark Plugs shall use their best efforts to effectuate this Agreement and its purpose, including filing a settlement complaint for the Released Parts and an immediate, complete, and final dismissal with prejudice of such complaint as to NGK Spark Plugs, but not as to any defendant other than NGK Spark Plugs. Should the court require a delay between the filing of the complaint and the dismissal, all other proceedings in the litigation shall, by virtue of this Agreement, be stayed as to NGK Spark Plugs. The California AG and NGK Spark Plugs agree to take whatever further steps, if any, as may be necessary in this regard and agree to seek immediate dismissal of the settlement complaint. NGK Spark Plugs agrees to waive service of process of the settlement complaint filed by the

California AG, and the California AG agrees to send promptly a copy of the filed settlement complaint to NGK Spark Plugs by Federal Express or electronic mail at an address to be provided by NGK Spark Plugs. The California AG and NGK Spark Plugs agree that any such filing shall occur in the Eastern District of Michigan, or in the event jurisdiction is declined in the Eastern District of Michigan, then venue shall lie in the Superior Court of the State of California, County of San Francisco for claims asserted by the California AG. The Florida AG shall not file any such complaint against NGK Spark Plugs or any of the Released Parties.

7. The State AGs may hereafter discover facts other than or different from those which they know or believe to be true with respect to the Released Claims, but hereby, on behalf of the Settling States, expressly waive and fully, finally, and forever settle and release, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that NGK Spark Plugs and the State AGs have agreed to release, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The Released Claims do not include any claims (i) arising out of product liability; breach of warranty; breach of contract claims in the ordinary course of business; or (ii) related to defeat devices or auxiliary emission control devices (AECDs), including without limitation claims related to the design, marketing, calibration, manufacturing, or sale of hardware or software related to defeat devices or AECDs; or (iii) failure to disclose; misrepresentation; unfair or deceptive conduct not based on allegations of competitor communications, price-fixing, market allocation, bid-rigging or anti-competitive conduct.

8. The release provided herein shall not have an effect on any claims, under federal, California, or Florida laws, brought by litigants other than the Settling States against the Released Parties, including, but not limited to, any claims or potential claims asserted in the Actions on

behalf of plaintiffs or putative class members who do not fall within the foregoing definition of California or Florida.

9. For the purposes of this Agreement, "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including without limitation, electronically stored information. A draft or a non-identical copy of a document is a separate document within the meaning of this term. The term "English Translations" means English translations of documents that were originally written in a language other than English that NGK Spark Plugs has provided to Government Entities relating to their investigations into alleged competition violations with respect to the Released Parts. "Government Entities", and individually a "Government Entity", as used in this Agreement, means the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission ("JFTC"), and the European Commission ("EC").

10. In return for the release and discharge provided herein, in addition to the settlement amounts listed in Paragraphs 1 and 2 above, NGK Spark Plugs agrees to the sharing of, disclosure or discussion of information or Documents produced or provided pursuant to Paragraphs 11-17 of this Agreement and the Class Action Settlement Agreements among the State AGs, End-Payor Plaintiffs, and the Automobile Dealership Plaintiffs, unless the Class Action Settlement Agreements fail to receive final approval. Cooperation will take place consistent with the timing set forth specifically below, and in a manner that is in compliance with NGK Spark Plugs' obligations to Government Entities. Settling States agree to request such cooperation only when and only to the extent reasonably necessary for their continued investigation or prosecution of their claims related to the Actions. All cooperation shall be coordinated so as to avoid all unnecessary

7

duplication and expense whenever possible and shall not impose undue burden and expense on NGK Spark Plugs.

11. Identity of Individuals. At the request of the State AGs, within the conditions provided in Paragraph 10, counsel for NGK Spark Plugs shall provide the State AGs with the identity of all current and former employees, directors and officers of NGK Spark Plugs who: (1) were interviewed and/or prosecuted by a Government Entity in connection with alleged price-fixing, bid rigging and market allocation of the Released Parts, provided, however, that NGK Spark Plugs shall not be required to disclose to the State AGs the specific Government Entity or Government Entities by which each such current or former employee, director, or officer of NGK Spark Plugs was interviewed and/or prosecuted; or (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to the Released Parts.

12. Transactional Data. At the request of the State AGs, within the conditions provided in Paragraph 10, NGK Spark Plugs will use its best efforts to produce on a rolling basis within ninety (90) days after such request, existing and reasonably accessible transactional data, as it exists in NGK Spark Plugs' electronic databases reasonably retrievable at the time of the request, concerning NGK Spark Plugs' sales of the Released Parts incorporated into Vehicles sold in the United States and (i) sold to original equipment manufacturers, or (ii) sold to other purchasers of Released Parts ("Transactional Data") from January 1, 1998 through the Effective Date. In addition, to the extent Settling States continue to investigate or pursue claims related to the Actions with respect to the Released Parts, NGK will provide, in response to a written request from a State AG, a single production of electronic Transactional Data generated during the two years after the Effective Date concerning Released Parts, as it exists in NGK Spark Plugs' electronic databases reasonably retrievable at the time of the request, within sixty (60) days of the receipt of such

8

request, NGK shall preserve such transactional data until a motion for final approval of settlement agreement against the last defendant in the Actions has been granted. NGK Spark Plugs will produce Transactional Data only from existing electronic transaction databases, except that, to the extent NGK Spark Plugs has not recorded or maintained electronic transaction data for any period between January 1, 1998 and the Effective Date, then NGK Spark Plugs will use reasonable efforts to produce existing hard copy records of sales transactions not recorded or maintained electronically in the existing electronic sales transaction database. "Vehicle", as used in this Agreement, shall refer to new four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.

13. Vehicle Identification. At the request of the State AGs, within the conditions provided in Paragraph 10, NGK Spark Plugs shall, after conducting a reasonable search and to the best of its knowledge, identify those Vehicles sold in the United States from January 1, 2000 through the Effective Date that contain the Released Parts sold by NGK Spark Plugs.

14. Documents. At the request of the State AGs, within the conditions provided in Paragraph 10, NGK Spark Plugs will, no later than thirty (30) days after such a request, produce (1) Documents, including English translations to the extent they exist, provided by NGK Spark Plugs to Government Entities or seized by Government Entities from NGK Spark Plugs relating to their investigation into alleged competition violations with respect to the Released Parts for Vehicles sold in the United States; (2) Documents concerning Released Parts in connection with a communication, meeting, or agreement regarding Released Parts, by any employee, officer or director of NGK with any employee, officer, or director of another manufacturer of Released Parts for Vehicles sold in the United States, but that were not provided to or seized by Government Entities; (3) Documents concerning NGK Spark Plugs' determination of their prices for Released

Parts for new Vehicles sold in the United States; and (4) existing and reasonably accessible information with respect to requests for quotation by or for original equipment manufacturers ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Released Parts sold in the United States, including any Annual Price Reduction (APR) Documents. NGK Spark Plugs will not be required to make available to the State AGs any Document whose disclosure is prohibited by any court order, foreign or domestic law, or by a Government Entity.

15. Attorney Proffers. At the request of the State AGs, within the conditions provided in Paragraph 10, NGK Spark Plugs' counsel will make themselves available at a mutually agreed location in the United States for up to three (3) meetings of one business day each within thirty (30) business days to provide an attorneys' proffer of facts known to them. Thereafter, NGK Spark Plugs' counsel will make themselves available for reasonable follow-up conversations in connection with the attorney's proffers and will use best efforts to respond to questions posed by the State AGs.

16. Witness Interviews. NGK Spark Plugs further agrees to make available for interviews and depositions up to six (6) persons who are directors, officers, and/or employees of NGK Spark Plugs at the time of the request, provide up to six (6) declarations or affidavits from the same persons and make those persons available to testify at trial, if reasonably necessary. The interviews and depositions shall be conducted at a mutually agreed-upon location in the United States or in London, and each deposition shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days. If the interview or deposition takes place outside the country of the witness's residence, the State AGs shall reimburse half the reasonable

travel costs incurred by such persons for time or services rendered. Such travel expenses may include economy airfare, meals, lodging and ground transportation. Reimbursable expenses shall not exceed $1,500 per deponent or witness. If the interview and the above-described deposition occur during the same trip, the above-limitations will apply to that trip.

17. In addition to its cooperation obligations set forth herein, NGK Spark Plugs agrees to produce through affidavit(s), declaration(s), and at trial, if necessary, in the State AGs' discretion, representatives qualified to authenticate and establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any of NGK Spark Plugs' Documents or transactional data produced or to be produced by NGK Spark Plugs. The State AGs agree to use their best efforts to obtain stipulations that would avoid the need to call NGK Spark Plugs witnesses at trial for the purpose of obtaining such evidentiary foundations.

18. The California AG agrees that the use of any information or documents provided pursuant to this Agreement shall be subject to the terms of the Protective Order in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.) (Dkt. No. 200), to which the California AG agrees to be bound. All documents and other information provided pursuant to this Agreement will be deemed at least "Highly Confidential," as said designation is described in the Protective Order, and subject to the Protective Order as if they had been produced in response to discovery requests and so designated. The parties and their counsel further agree that any statements made by NGK Spark Plugs' counsel in connection with and/or as part of this settlement, including any attorney proffers, shall be governed by Federal Rule of Evidence 408. Notwithstanding the foregoing, the State AGs shall not disclose information obtained from attorney proffers to any other non-governmental parties, claimants or potential claimants who did not attend such proffers, except with the express written consent of NGK Spark Plugs.

19. The California AG agrees that the Documents and information provided by NGK Spark Plugs pursuant to this Agreement shall be records of investigations conducted by the office of the Attorney General as that term is used in the California Public Records Act (Cal. Gov't Code §6254(f)), and they shall not disclose the information in response to a request for inspection or copying under the California Public Records Act (Cal. Gov't Code § 6250 *et seq.*) or other statutory or regulatory provisions akin to the federal Freedom of Information Act, except to the extent required by law. To the extent the California AG receives requests that it believes may require the provision of any such information, the California AG shall first advise NGK Spark Plugs and afford it an opportunity to take action to maintain the confidentiality of information it has provided to the extent NGK Spark Plugs deems necessary and appropriate and at NGK Spark Plugs' expense.

20. The Florida AG shall serve, and NGK Spark Plugs agrees to accept service of process of, Civil Investigative Demands requesting documents, witness interviews, and testimony within the conditions provided in and limited by Paragraphs 10-17 of this Agreement. The Florida AG shall keep any information or Documents produced pursuant to the Civil Investigative Demands confidential.

21. The release set forth in this Agreement shall not release NGK Spark Plugs' obligations to provide cooperation pursuant to this Agreement, as set forth in Paragraphs 10-17 of this Agreement. Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, NGK Spark Plugs' respective obligations to provide cooperation under this Agreement shall cease whenever ordered by a court or on the date that final judgment has been entered in the MDL Litigation for any claims asserted against the parties named as defendants for price-fixing,

allocating markets, bid-rigging, or any other forms of anti-competitive conduct in the manufacture, sale, or distribution of the Released Parts.

22. This Agreement shall not be deemed or construed to be an admission of liability or of any violation of any statute or law or of any wrongdoing by NGK Spark Plugs. Nor shall this Agreement be deemed as an admission by NGK Spark Plugs of any of the allegations or claims by the Settling States. This Agreement may not be used by the Settling States or anyone else in any pending or future civil, criminal, or administrative action or proceeding against NGK Spark Plugs or any of the Released Parties, except in a proceeding or action to enforce this Agreement.

23. This Agreement does not settle or compromise any claim by the Settling States against any defendant or alleged co-conspirator other than the Released Parties. All rights against such other defendant or alleged co-conspirator are specifically reserved by the Settling States. Nothing in this Agreement shall affect the right of the Settling State to claim that joint and several liability of defendants other than the Released Parties includes the volume of sales made by NGK Spark Plugs.

24. This Agreement may be executed in counterparts, each of which will be deemed an original, but which together will constitute one and the same instrument, and a facsimile signature or PDF signature shall be deemed an original signature for purposes of executing this Agreement.

25. This Agreement contains the entire Agreement between the parties, and no other understandings or agreements, verbal or otherwise, exist between the parties, except as set forth herein.

26. This Agreement may not be modified, changed, cancelled, rescinded, amended, or varied, nor may any or all of its terms be waived, except by a writing signed by all of the parties.

27. Neither the Settling States nor NGK Spark Plugs shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

28. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by electronic mail or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

29. The California AG and NGK Spark Plugs agree that with respect to the settlement with California, this Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of California and the parties agree that venue for any and all matters or disputes arising out of this Agreement and asserted by or against the California AG shall lie solely in the U.S. District Court for the Eastern District of Michigan or in the event jurisdiction is declined in the Eastern District of Michigan then venue shall lie in the Superior Court of the State of California, County of San Francisco.

30. The Florida AG and NGK Spark Plugs agree that with respect to the settlement with Florida, this Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Florida and the parties agree that venue for any and all matters or disputes arising out of this Agreement and asserted by or against the Florida AG shall lie solely in the U.S. District Court for the Eastern District of Michigan or, in the event jurisdiction is

declined in the Eastern District of Michigan, then venue shall lie in the Second Circuit Court of the State of Florida.

31. Each party affirms that this Agreement has been executed by its authorized representative, who is acting within his or her capacity and authority and that by his or her signature this representative is binding the party on behalf of whom the Agreement is executed to the terms and conditions of this Agreement.

Dated: 12/27/19

Xavier Becerra
Attorney General of California

By: _____
Kathleen E. Foote
Senior Assistant Attorney General
Anik Banerjee
Deputy Attorney General
300 South Spring Street, Ste. 1702
Los Angeles, CA 90013

*Counsel for the State of California*

Dated: 12/27/19

Ashley Moody
Attorney General
State of Florida

By: _____
Patricia A. Conners
Deputy Attorney General
Timothy M. Fraser
Assistant Attorney General
Antitrust Division
PL-01, The Capitol
Tallahassee, FL 32399

*Counsel for the State of Florida*

Dated: 12/30/2019

By: _____
Eric P. Enson
Jones Day
555 S. Flower Street, 50th Floor

15

Los Angeles, CA 90071

John M. Majoras
Jones Day
510 Louisiana Avenue, N.W.
Washington, D.C. 20001

Ellen L. Maxwell-Hoffman
Bowles Rice LLP
600 Quarrier Street
Charleston, WV 25301

*Counsel for NGK Spark Plug Co., Ltd. and
NGK Spark Plugs (U.S.A.), Inc.*

16